IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**LESLIE BLOUNT and
ANGELA KNIGHT,**

                **Plaintiffs,**

**v.**                                          **Case No. 3:03cv225/RV**

**FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,**

                **Defendants.**
_____/

## ORDER

      Plaintiffs Leslie Blount and Angela Knight brought this action against the defendant Florida Department of Corrections ("FDOC"), Warden Joe Petrovsky, and Captain James Dick, alleging racial discrimination, sexual harassment, and retaliation. In my prior Order of August 26, 2004, I granted the defendant FDOC summary judgment with respect to plaintiffs' claims of race discrimination and retaliation in violation of Title VII and Section 1983.  The parties having had a full opportunity for discovery, defendants FDOC, Warden Petrovsky, and Captain Dicks now move for summary judgment on plaintiffs' remaining claims.  (Doc. 57) Unless otherwise noted, the facts appear to be undisputed.

**I.    FACTUAL BACKGROUND**

      Shortly after FDOC filed its first motion for summary judgment, the plaintiffs amended their complaint to include Warden Petrovsky as an individual defendant and to add a sexual harassment claim, as well as a new claim of retaliation against FDOC. In my prior Order, I granted FDOC summary judgment with respect to all of plaintiffs' claims against FDOC, except the new claims of sexual harassment and retaliation which were not addressed in FDOC's first motion.  The Section 1983 claim against

the individual defendants was not addressed earlier because the individual defendants were not parties at the time of the FDOC's first motion for summary judgment.[1]

The factual background of this case with respect to the plaintiffs' race discrimination claims was set out in detail in my prior order. Those facts are fully incorporated herein. With respect to the plaintiffs' new allegations of sexual harassment and retaliation, the undisputed facts are as follows.[2]

At the time that this complaint was filed, Plaintiff Knight and Blount were correctional officers at the Santa Rosa Correctional Institute ("SRCI") in Milton, Florida.[3]   On November 1, 2003, Knight had a verbal altercation with another correctional officer, Officer Dubose. The incident was reported to Captain Dicks, who was Knight's direct supervisor.  Captain Dicks asked Knight to come to his office to discuss the matter.  As a result of the meeting with Captain Dicks on November 1, 2003, Knight was sent home.

Officer Dubose, as well as at least two other witnesses, wrote an incident

---

[1] It appears that Captain Dicks had not been served at the time FDOC filed the motion.  Moreover, Warden Petrovsky was added after FDOC filed its first summary judgment motion.

[2]   The plaintiffs offer the affidavits of Plaintiff Knight and Sergeant Brenda Gilbert in support of their claim.  However, these affidavits contain only an electronic signature like that used by attorneys for filing electronic documents with the court. An electronic signature by an affiant who is not an attorney authorized to file documents with an electronic signature is a nullity for evidentiary purposes. Cf. N.D. Fla. Loc. R. 5.1(A)(7).  Plaintiffs committed this same error when filing affidavits in support of their first summary judgment motion, and I clearly informed the Plaintiffs of the proper procedure in my prior order.   Nevertheless, I have taken these affidavits into account in considering the present motion.

[3] In May of 2003, Blount was promoted to sergeant and transferred to the midnight shift.  However, Blount resigned from FDOC in January of 2004 citing personal reasons for her resignation.   Knight, on the other hand, still works as a correctional officer at SRCI.

report about the verbal altercation.  In response to the incident in Captain Dicks' office,  on November 3, 2003, Knight wrote a letter to Assistant Warden Ellis explaining that while she was in Captain Dicks' office on November 1, attempting to relay her side of the verbal altercation,  Officer Dubose approached the Captain's door, and the plaintiff was asked to leave.  Knight, noticing that a football game was on the television in the Captain's office, claims she made a derogatory comment about football which made Captain Dicks angry.[4]  Knight explained to Assistant Warden Ellis, in this same letter, that she believed that Captain Dicks sent her home because of the comment she made about football, as well as because he was retaliating against her for filing this racial discrimination law suit.  Knight also complained that she had informed Captain Dicks several weeks prior to the incident that she felt uncomfortable with him making sexual remarks to her, such as referring to his penis size.  Knight claimed in her letter to the Assistant Warden that, based on all of these factors, Captain Dicks had a multitude of reasons to retaliate against her.

This was the first time Knight had ever reported any alleged sexual harassment by Captain Dicks to SRCI management.[5]  In fact, Knight had not mentioned sexual harassment in her prior EEOC charge filed in September of 2002.  Nor did this Title VII action which was pending at the time contain any allegations of sexual harassment. Knight testified later that she did not report the sexual harassment prior to that time

---

[4] Both Officer Dubose and Captain Dicks advised FDOC's internal investigator that during the course of this meeting Knight became angry and violent, shouting at Captain Dicks.  Thus, Captain Dicks sent Knight home, on annual leave, for insubordination.  The plaintiff disputes this fact, but it is not material to any of the issues in this case.

[5] In a November 3, 2003, incident report concerning the events of November 1, 2003,  Knight again alleged that Captain Dicks had retaliated against her, but she did not mention sexual harassment.  Instead, she recited the details leading up to the verbal altercation with Officer Dubose and explained that Captain Dicks became angry with her and sent her home after she made a comment about football.

because she was scared of what may happen.

In response to Knight's letter to Assistant Warden Ellis, SRCI management decided on its own initiative to conduct an investigation into Knight's allegations of sexual harassment.  SRCI management also decided that Knight should be temporarily reassigned to another facility to separate her from Captain Dicks during the pendency of the investigation.  On November 6, 2003, SRCI management informed Knight via a letter that, effective immediately, she was temporarily being transferred to the Century Correctional Institution ("CCI").   This transfer was a lateral transfer that did not result in a demotion, loss in pay or seniority, or decrease in responsibility, and was consistent with FDOC policy regarding harassment and hostile work environment claims.   As a result of the transfer to CCI, Knight's travel time to work increased by approximately 20 to 25 minutes each way.[6]

An investigation of Knight's sexual harassment claim was initiated by the Department of Correction's Inspector General's Office on November 19, 2004. Captain Dicks had been Knight's supervisor since the time she began working at SRCI in 1999. Knight alleged that, dating back as far as 2000, Captain Dicks had made various sexual remarks to her.  For instance, Captain Dicks made frequent comments about his penis size and asked Knight whether "she swallowed," whether she "sucked dick" and other sexually related comments.[7]   Knight also testified that Captain Dicks made frequent comments to some staff members while she was pregnant that he was the father of her baby, and on at least one occasion he called her a lesbian.  Although Knight contends that Captain Dicks began making sexual comments to her as early as

---

[6] It usually takes Knight 20-25 minutes to drive to SRCI, but the commute to CCI took her 45-50 minutes.

[7] Knight also alleged that Captain Dicks made several racially derogatory comments to her as well.  However, those allegations were discussed in my prior order, and defendants were granted summary judgment with respect to the plaintiffs' Title VII race discrimination claim.

2000, she also testified that she intentionally followed him to day shift in August 2001 because Captain Dicks was a "fair supervisor."   Further, she explained that Captain Dicks and she had a "decent rapport" up until the time she and others began complaining of racial discrimination at some point in 2002.  Knight explains that she did not report any of these sexual comments to management because she was "in fear of retaliation."

On April 20, 2004,  FDOC  concluded its internal investigation.  As a result, Captain Dicks was counseled about making potentially inappropriate comments in the workplace.  Following the conclusion of the internal investigation, Knight was invited by Warden Petrovsky to return to her post at SRCI, and apparently she did so about April 28, 2004.

On February 9, 2004, Knight had filed a supplemental charge of discrimination with the EEOC, claiming that her transfer to CCI was in retaliation for her informal sexual harassment complaint, as well as for filing this court action alleging racial discrimination.  She received a second notice of right to sue from the EEOC on March 18, 2004.  The plaintiffs filed a second amended complaint, with leave of court, on May 28, 2004, adding a claim for sexual harassment in employment against FDOC and a claim of retaliation based on Knight's transfer to CCI.  These two claims are the subject of the pending motion for summary judgment.

## II.   DISCUSSION

### A.   Summary Judgment Standard

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986); see also Morisky v. Broward County, 80 F.3d 445, 447 (11th Cir. 1996).

However, summary judgment is improper "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986).  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  See id.; see also Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact.  See Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Ramsey v. Leath, 706 F.2d 1166, 1170 (11th Cir. 1983).   On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party.  Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1313 (11th Cir. 1999).

B.    Knight's Claim of Retaliation under Title VII

Knight claims that the defendants retaliated against her for bringing this Title VII action, as well as for filing an internal complaint of sexual harassment, by transferring her to Century Correctional Institute ("CCI").   Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee because the employee has "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."   42

U.S.C. §2000e-3(a).  To recover for retaliation, the plaintiff must initially demonstrate that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.  Brochu v.  City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir.  2002);  See 42 U.S.C.§2000e-3(a).

As to the first element, "one example of 'statutorily protected expression' is 'opposing any practice made an unlawful employment practice' by Title VII, such as sexual harassment." Lipphardt v. Durango Steakhouse, 267 F.3d 1183, 1187 (11th Cir. 2001)(citing 42 U.S.C. §2000e-3(a); See also,  E.E.O.C. v. Total System Services, Inc., 221 F.3d 1171, 1174 (11th Cir. 2000).  Here, Knight did not file a formal EEOC charge against Captain Dicks for sexual harassment.   Nevertheless, when Knight complained to SRCI management that Captain Dicks had engaged in sexually related conduct toward her, she opposed an unlawful employment practice under Title VII. See  Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1201 (11th Cir. 2001)("Statutorily protected expression includes internal complaints of sexual harassment to superiors as well as complaints lodged with the EEOC . . ."). The plaintiff is not required to prove that Captain Dicks' behavior constituted harassment in order to recover for retaliation.  Id.

Without question, the filing of the Title VII racial discrimination lawsuit was statutorily protected activity.  Accepting that she engaged in statutorily protected activity by filing an informal sexual harassment complaint, Knight must also establish the second element of a prima facie case of retaliation - - - an adverse employment action.   Based on the undisputed facts in the record, Knight has failed to establish that she suffered such an adverse employment action after filing her informal sexual harassment complaint.

As an initial matter, Knight contends for the first time in her response to the defendants' summary judgment motion that her retaliation claim is based on her

transfer to CCI, as well as two new incidents of retaliation: (1) a 10-day suspension in August 2004 for cursing; and (2) a notice of proposed disciplinary action she received on September 7, 2004.   These separate incidents of alleged retaliation will not be considered in this motion, as they were not included in the amended complaint.

A Title VII plaintiff is precluded from raising, in a pre-trial motion, claims which were not alleged in the complaint.  Coon v. Georgia Pacific Corp., 829 F.2d 1563 (11th Cir. 1987). The Eleventh Circuit recognized in Coon that while equitable doctrines such  as the "like or related" test may have allowed the plaintiff to plead the different claims by amendment without filing a new EEOC charge, they do not permit the plaintiff to prove these claims at trial without having first plead them in her complaint.[8]  Id. at 1568-69.   Accordingly, consideration of the new claims of retaliation will not be considered as part of the plaintiffs' claim, and only the incident of Knight's transfer to CCI will be considered in evaluating her retaliation claim. See also Pleming v. Universal-Rundle Corp, 142 F.3d 1354, 1357 (11th Cir. 1998)(holding that the "parties frame the scope of the litigation at the time the complaint is filed.")

With respect to her temporary transfer to CCI, Knight contends that it constituted an adverse employment action because the extra driving time placed a burden on her, and CCI housed an inmate whom she knew from her civilian life and with whom she had a hostile relationship, thus placing her in an unsafe environment. To be considered an adverse employment action for purposes of Title VII's anti-retaliation provision, the action must either be an ultimate employment decision or else must "meet some threshold level of substantiality."  Bass v. Bd. of County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1118 (11th Cir. 2001)(quoting Gupta v. Florida

---

[8] The purpose of this rule is clearly evident in this case where the plaintiffs discuss the new incidents of alleged retaliation in their response, denying the defendants an opportunity to respond or offer any legitimate, non-discriminatory reasons for the alleged adverse employment actions.  Moreover, the discovery deadline in this case has passed.

Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000)).   An ultimate employment decision includes such decisions as termination, failure to hire, or demotion. Id.  Here, it is undisputed that Knight's transfer did not constitute an ultimate employment decision, as it did not decrease her pay, result in her termination, otherwise demote her, or alter her job responsibilities.

Thus, the only possible basis for the transfer to constitute an adverse employment action is if the transfer met some threshold level of substantiality.  The Eleventh Circuit characterizes the threshold level of substantiality as employment action which is "objectively serious and tangible enough to alter [the employee's] 'compensation, terms, conditions, or privileges of employment . . .'" Gupta v. Florida Bd. of Regents, supra, 212 F.3d at 587(quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d. Cir. 1997)).  "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Davis v. Town of Lake Park, Fla, 245 F.3d 1232, 1239 (11th Cir. 2001).

Knight first argues that her transfer to CCI placed a burden on her because she had to incur an increased travel time to and from work.   Specifically, Knight's commute time to CCI was 45-50 minutes, whereas her commute time to SRCI took her 20-25 minutes.  Generally, a lateral transfer that only subjects the employee to an increased commute time is not objectively serious and tangible enough to meet the threshold of substantiality.  See e.g., Spears v. Missouri Dept. of Corrections and Human Res., 210 F.3d 850, 854 (8th Cir. 2000)(holding that a transfer that did not require change of residence merely created an inconvenience, which is not actionable for Title VII purposes);  Sanchez v. Denver Pub. Schs., 164 F.3d 527 (10th Cir. 1998)(holding that thirty minute commute increase following transfer was not adverse);  Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir.

1997)(holding that a transfer that required moving from one city to another is not adverse where the transfer did not involve a change in salary, benefits, or other aspects of employment); Burnett v. Northside Hosp., 342 F. Supp. 2d 1128, 1136-37 (N.D. Ga. 2004)(citing numerous district court cases holding that increased travel time does not constitute adverse employment action).   Here, Knight's transfer to CCI increased her commute time by no more than 25 minutes.   While the increased travel time may have added some inconvenience to her schedule, it did not rise to the level of an adverse employment action.   As the Eleventh Circuit has recognized, "not everything that makes an employee unhappy is an actionable adverse employment action." Bass v. Bd. of County Comm'rs, supra, 256 F.3d at 1118.

Knight also contends that the transfer to CCI was adverse because an inmate named Marcus Hill was incarcerated at CCI, and Knight and her family were partly responsible for his arrest and imprisonment.[9]   Thus, Knight argues, her transfer to CCI paced her in an unsafe, hostile working environment.   While Knight argues that it is against "agency policy" to allow a correctional officer to work in a prison that houses a relative or an inmate known to the officer from civilian life, there is nothing in the record evidencing that.   Further, even assuming that to be the case, Knight does not contend that she was in a position at CCI where Hill's presence created a problem. In fact, Knight testified that, except for a short period of time, she was assigned to a different dorm at CCI than the one in which Hill was housed.   She further testified that while she was working at CCI, she never had a discussion with Hill, he did not attempt to make contact with her, and he made no threats towards her.   Thus, Knight was in no way harmed by the presence of Hill at CCI while she was temporarily assigned to work there.   An employment action that does not result in any harm to the

---

[9] According to Knight, Hill was abusive to her sister, and Knight and her family called and reported the abuse.   During the course of the criminal investigation, Knight testified that she helped law enforcement by providing them with Hill's residence, description and various other details.

plaintiff is not an adverse employment action.  Gupta v. Florida Bd. of Regents, supra, 212 F.3d at 588-590.

In April, 2004, after the investigation of Knight's sexual harassment claim had concluded, Knight was given the choice to return to SRCI or remain at CCI. At the end of April, she transferred back to SRCI and resumed her regular duties.  In light of all these circumstances, Knight has failed to establish that she suffered an adverse employment action by her transfer to CCI in November of 2004.

 Even if Knight had established an adverse employment action, the defendants are still entitled to summary judgment on Knight's retaliation claim because she has failed to rebut  FDOC's legitimate, non-discriminatory reason for transferring Knight to CCI.  Once a plaintiff makes out a prima facie case of retaliation, the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action.  Brochu v.  City of Riviera Beach, supra, 304 F.3d at 1155.   Here, Warden Petrovsky testified that he and other SRCI management believed it was in the best interest of Knight and Captain Dicks that the two should be separated pending the investigation of Knight's sexual harassment claim.  He further testified that such a separation is consistent with FDOC's policy. Knight seems to accept this separation rationale, but argues that Captain Dicks should have been transferred instead of herself.[10]  However, Warden Petrovsky explained that transferring Captain Dicks was not feasible, as there are only five (5) Captains

---

[10] To the extent that Knight argues that SRCI management could have simply transferred her to another shift at SRCI to avoid the burden on her family imposed by the extra travel time, Knight's own testimony establishes that this was not a desirable option for Knight.  During her deposition, Knight repeatedly testified that a transfer to the night shift would have placed a terrible burden on her family, as she needed to be home at night to care for her two children.  In fact, she testified that because she needed to be home to take care of her children at night, being able to stay on the day shift was her number one priority, and she would prefer to have her first choice of shifts over her first choice of job assignments.

employed at SRCI, as opposed to two hundred and fifty (250) correctional officers. Thus, transferring  Captain Dicks to CCI was not a viable option.[11]

Accordingly, to survive summary judgment, the plaintiff must establish in the record (or at least create a genuine issue of material fact) that the employer's proffered reason for the adverse employment action was not its true reason, but was instead a pretext for discrimination. Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004).   The plaintiff has failed to provide any evidence of pretext.   Knight's conclusory allegation that she was retaliated against, based on her own subjective belief, in the absence of supporting evidence, is insufficient to withstand summary judgment.   Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). Thus, the defendants are entitled to summary judgment with respect to Count II of the amended complaint, alleging retaliation in violation of Title VII.

C.   Knight's Claim of Sexual Harassment

The defendants argue that Knight's sexual harassment claim is administratively barred because she has failed to file a charge of sexual harassment with the EEOC. The plaintiff does not respond to this argument.  It is well established that a plaintiff, before instituting a Title VII action in federal court, must file a charge of discrimination

---

[11] Knight also argues that another white female employee, Sergeant Brenda Gilbert, who also complained of sexual harassment against Captain Dicks, was not transferred to another facility pending the investigation.  However, as noted by FDOC, the other employee was not similarly situated to Knight.   Specifically, Knight is a correctional officer, whereas Sergeant Gilbert was obviously a Sergeant. There are fifty-four (54) Sergeants compared to more than two-hundred and fifty (250) correctional officers at SRCI which made it more difficult to transfer Sergeant Gilbert. Further, the defendants note that Sergeant Gilbert's sexual harassment complaint did not allege that Captain Dicks had subjected her to a hostile work environment. Instead, her complaint was based on Captain Dicks' conduct toward her after she ended a personal relationship with him.   The defendants contend that due to the nature of Knight's complaint, i.e. a hostile work environment, it was crucial that FDOC separate her from Captain Dicks if at all possible.  Based on these facts, Knight was not similarly situated to Sergeant Gilbert.

with the EEOC.  <u>Forehand v. Florida State Hospital</u>, 89 F.3d 1562, 1567 (11th Cir. 1996).   The purpose of this requirement is that the EEOC "should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts."   <u>Evans v. United States Pipe & Foundry Co.</u>, 696 F.2d 925, 929 (11th Cir. 1983).  <u>See</u> <u>also</u> <u>Wu v. Thomas</u>, 863 F.2d 1543, 1548 (11th Cir. 1989)("The purpose of the filing requirement is to insure 'that the settlement of grievances be first attempted through the office of the EEOC.'"(quoting <u>Oatis v. Crown Zellerbach Corp.</u>, 398 F.2d 496, 498 (5th Cir. 1968)).  In other words, Title VII contemplates that the EEOC should have the opportunity to reach the merits of a discrimination complaint before the federal courts examine the merits.

In order to fulfill this purpose, the Eleventh Circuit has stated that a plaintiff's claim under Title VII is limited in scope by the charges contained in the plaintiff's EEOC filing. <u>Alexander v. Fulton County, Ga.</u>, 207 F.3d 1303 (11th Cir. 2000); <u>Mulhall v. Advance Sec., Inc.</u>, 19 F.3d 586, 589 n.8 (11th Cir. 1994).  However, recognizing the remedial purpose of Title VII, the Eleventh Circuit has construed EEOC charges broadly and held that Title VII actions may include claims that are "like or reasonably related" to the claims raised in the employee's EEOC charge and which are within the scope of the investigation which could reasonably be expected to grow out of the charge. <u>Wu v. Thomas</u>, <u>supra</u>, 863 F.2d at 1547;  <u>Baker v. Buckeye Cellulose Crop.</u>, 856 F.2d 167, 169 (11th Cir. 1988).

Thus, "(t)he starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation." <u>Evans v. U.S. Pipe & Foundry, supra</u>, 696 F.2d at 929.   Prior to filing this Title VII action originally, Knight had filed an EEOC charge alleging only race discrimination and retaliation.  Knight's first EEOC charge did not contain any allegations of sexual harassment. Approximately three months after her transfer to CCI, Knight filed a second EEOC charge alleging retaliation

and race discrimination.  Knight's second EEOC charge alleged that FDOC retaliated against her, as evidenced by her transfer, for filing her original EEOC charge of racial discrimination, for filing this Title VII action (which at that time did not include a sexual harassment claim), and for complaining informally about sexual harassment to SRCI management.

Significantly, in her second EEOC charge, Knight only referenced her informal and internal sexual harassment complaint in the context of her retaliation claim and the role her informal complaint may have played in SRCI's decision to transfer her.   In other words, the ultimate act in which Knight complained of was her transfer to CCI. In fact, she only checked the boxes for a claim of retaliation and race discrimination, leaving the box for sex discrimination blank.  While this fact is not dispositive of the issue, it is evidence that Knight was not submitting her claim of sexual harassment to the EEOC for investigation.[12]   This conclusion is further underscored by the fact that Knight failed to describe or allege any offensive conduct pertaining to sexual harassment in her complaint to the EEOC.

The Eleventh Circuit has explained that the like or related test is "limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."  Chanda v. Engelhard/ICC, 234 F.3d 1219,

---

[12] The Eleventh Circuit's willingness to impose a liberal interpretation of the factual allegations made in an EEOC charge stems partly from a recognition that often times EEOC charges are completed by laypersons rather than attorneys who understand the distinctions in the law. Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 n.4 (5th Cir. 1970)("While the distinction between the two types of discrimination will undoubtedly be crystal clear to a lawyer delving into the law books to research a legal question, it may not be so apparent to an uneducated layman who is required to put pen to paper and, by filling out a form, to articulate his grievance as best he can without expert legal advise."). Here, however, at the time Knight filled out her second EEOC charge, this Title VII action was well underway, and she was represented by counsel who understood the distinction between a charge of retaliation and a charge of sexual harassment.

1225 (11th Cir. 2000).   Here, the allegations of Knight's EEOC charge would not trigger an EEOC investigation into the merits of her sexual harassment claim.  The substantive nature of the two claims are very different.  A retaliation claim concerns the employer's intent and motivation behind an adverse employment action, asking whether the employer's action was deliberately attached to the plaintiff's exercise of a statutorily protected right.  Accordingly, the EEOC could reasonably be expected to investigate the employer's motivation for transferring Knight to CCI, and in that context, determine that she did in fact file an informal complaint of sexual harassment.  But Knight does not contend, and there are no facts in the record to support an inference, that she was transferred to CCI by Captain Dicks because of his sexual harassment.  On the contrary, Knight admits that the decision to transfer her to CCI was made by Warden Petrovsky and other SRCI management.   Thus, Knight's present sexual harassment claim and her EEOC charge of retaliation do not concern interrelated facts as to the employer's intent and motivation.

When a retaliation claim arises after a Title VII plaintiff submits a charge of discrimination with the EEOC, the retaliation claim is generally considered to be within the scope of the original EEOC discrimination charge.  See Baker v. Cellulose Corp., supra, 856 F.2d at 169.  In Gupta v. East Texas State University, 654 F.2d  411,414 (5th Cir. 1981), the former Fifth Circuit  indicated that this rule is limited to retaliation claims which follow an EEOC charge of discrimination due to the special nature of retaliation claims.  Since a retaliation claim generally follows an employee's claim of discrimination with the EEOC, "requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case – a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII." Id.; See also Baker v. Buckeye Cellulose, supra, 856 F.2d at 169.

The concerns expressed in Baker and Gupta, specifically of obviating the need

for double filings and preventing unnecessary procedural technicalities which discourage a Title VII plaintiff from filing suit, are not relevant under the circumstances of this case.   Knight was fully aware of her alleged sexual harassment claim at the time she filed a charge of retaliation with the EEOC.  In fact, according to Knight, the alleged sexual harassment began well before her EEOC charge of retaliation. Therefore, she easily could have included a charge of sex discrimination based on Captain Dicks' conduct in either of her two EEOC charges.   Yet, instead she chose to charge only retaliation and race discrimination and alleged only facts which support those charges.  In this case, permitting Knight to seek judicial review in federal court of her sexual harassment claim would allow her to circumvent the EEOC's investigatory and conciliatory role as contemplated by Title VII.  As Knight has failed to submit her sexual harassment charge to the EEOC for review, defendants are entitled to summary judgment on Count III of plaintiffs' second amended complaint.

D.    Plaintiffs' Section 1983 Claim Against Individual Defendants

In their second amended complaint, both Blount and Knight allege that the defendants engaged in unlawful racial discrimination and retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, made actionable through Title 42, United States Code, Section 1983. In my prior order, I granted the defendant FDOC summary judgment with respect to the plaintiffs' Section 1983 claim, based on its Eleventh Amendment sovereign immunity.  Now, the individual defendants also move for summary judgment on plaintiffs' Section 1983 claims, arguing that the plaintiffs have failed to offer any evidence of racial discrimination or retaliation.   In turn, the plaintiffs did not address the Section 1983 claim in their response to the defendants' motion, nor did they dispute any of the individual defendants' facts regarding the Section 1983 racial discrimination claim.

While it is true that in my prior order I did not address the merits of the

plaintiffs' Section 1983 claim against FDOC due to FDOC's sovereign immunity, I did address in detail the merits and evidence of the plaintiffs' racial discrimination claim with respect to their Title VII actions. Significantly, the Eleventh Circuit has held that "when section 1983 is used as a parallel remedy for a violation of . . . Title VII, the elements of the cause of action are the same." Cross v. State of Alabama, 49 F.3d 1490, 1508 (11th Cir. 1995). Here, Knight and Blount base their Section 1983 claim on the same factual predicate and evidence as their Title VII racial discrimination claims. They have offered no additional evidence in support of their claims of racial discrimination against the individual defendants. Thus, the conclusion in my prior order that Knight has failed to establish a claim of racial discrimination under Title VII entitles the individual defendants to summary judgment on Knight's Section 1983 claim as well. As stated in prior order, Knight has produced no evidence, apart from conclusory allegations and unsubstantiated hearsay, to establish racial discrimination.

With respect to Blount, in my prior order I concluded that Blount had failed to exhaust her administrative remedies as required to pursue a Title VII action. However, unlike Title VII, Section 1983 does not have an exhaustion requirement. See, e.g., Johnson v. City of Ft. Lauderdale, 148 F.3d 1228 (11th Cir. 1998) (citing Trigg v. Fort Wayne Community Schools, 766 F.2d 299 (7th Cir. 1985)). Nevertheless, in my prior order I also recognized that even if Blount's racial discrimination claim had been exhausted, "there is no evidence whatsoever that Blount was subjected to a racially hostile work environment." See Order (Doc. 52), Aug. 26, 2004, at p.13 n.16. Like her co-plaintiff, Blount also bases her racial discrimination claim on hearsay, and sometimes even multiple hearsay. Blount has provided no admissible evidence of a hostile working environment or race discrimination. I also concluded in my prior order that Blount had failed to prove that she was subjected to an adverse employment action to support a retaliation claim. Order (Doc. 52), Aug. 26, 2004, at p.14 n.17. Blount argues that her transfer to evening shift constituted an adverse employment

action, but the record indicates that Blount was only transferred after she was promoted to Sergeant, and nearly a year and a half after she claims to have participated in statutorily protected activity.  I concluded that "(a)ny retaliation claim would therefore fail as a matter of law. Id.

In sum, the plaintiffs have failed to offer any evidence of racial discrimination in violation of the Equal Protection clause, and the individual defendants are entitled to summary judgment with respect to Count IV of the second amended complaint, which alleges a violation of Section 1983.

**III.    CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment on the plaintiffs' remaining claims (doc. 57) is GRANTED.  The Clerk is directed to enter final  judgment in favor of the defendants and against the plaintiffs.

DONE AND ORDERED this 10th day of June, 2005.


/s/ *Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**